R. L. COLEMAN & COMPANY, PLAINTIFF v. CITY OF ASHEVILLE, DEFENDANT

No. 8928SC1209

(Filed 5 June 1990)

## 1. Municipal Corporations § 33.4 (NCI3d) — expansion of mall — driveway intersection — city council minutes not ambiguous

The trial court erred in a declaratory judgment action seeking a judgment that plaintiff was entitled to construct an intersection with the driveway angle less than ninety degrees as part of a mall expansion by concluding that city council minutes requiring the ninety degree angle were ambiguous. It is uncontroverted that at the time plaintiff's proposed mall expansion project was under consideration, the private road within the mall had been in existence since 1973, had been used throughout that time by the public to enter and exit the mall, and intersected a public road at a driveway angle of approximately sixty-five to seventy degrees; the city council minutes plainly reflect that the question of changing the driveway angle was before the city council, the city's director of planning and zoning recommended that the driveway angle of the intersection be modified to create a T, public comment was received on the recommendation, and the minutes are devoid of any hint that the T intersection under consideration was other than perpendicular. Additional language in the minutes referring to city standards does not create an ambiguity even though there is a section of the Asheville Zoning Ordinance allowing a minimum driveway angle of sixty degrees because that is but one of many design specifications governing driveway entrance construction. The additional language in the minutes plainly refers not to driveway angle but to the remainder of the specifications governing such driveway entrance construction.

### Am Jur 2d, Zoning and Planning §§ 143, 294.

## 2. Municipal Corporations § 34 (NCI3d) — mall expansion — parking area — city requirements reasonably met

The trial court did not err in an action arising from a mall expansion by finding and concluding that the parking area as actually constructed reasonably met the requirements established by the city where the evidence shows that the

actual construction of the parking area deviated from the plans approved by the city council only in its realignment of the directional orientation of the individual parking spaces, there was no change in the total area set aside for parking in the west parking area, and the effect of the realignment was to cause a mere nine parking spaces in that area to be redistributed among the approximately four thousand total parking spaces available at the mall.

**Am Jur 2d, Zoning and Planning §§ 143, 294.**

APPEAL by defendant from judgment entered 30 August 1989 in BUNCOMBE County Superior Court by *Judge Forrest A. Ferrell.* Heard in the Court of Appeals 8 May 1990.

On 13 December 1988, plaintiff-developer filed its complaint seeking a declaratory judgment that it was entitled to construct, as part of its expansion of the Asheville Mall Shopping Center, an intersection connecting Brackettown Road, a private road within the mall, to White Pine Drive, a public road adjacent to the mall, by a driveway angle of less than ninety degrees. Plaintiff also sought injunctive relief instructing the City not to withhold a certificate of occupancy, or driveway and curb cut permits, upon completion of the intersection to incorporate a driveway angle of less than ninety degrees.

The City answered and counterclaimed, alleging that plaintiff was required, as a condition for the City's approval of the expansion project, to construct the intersection at a driveway angle of ninety degrees. The City further alleged that plaintiff had redesigned the west parking area of the mall in violation of the intent of the site plan approval.

The evidence at the trial before Judge Ferrell, sitting without a jury, tended to establish that on 22 December 1987, the Asheville City Council held a public meeting for the purpose, *inter alia,* of considering whether to approve plaintiff's plans for the expansion project. After hearing recommendations from its director of planning and zoning, as well as public comment on the expansion project, the city council approved the plan contingent upon the following pertinent requirement stated in the minutes: "[T]hat the Mall construct a 'T' intersection from Bracket[t]own Road onto White Pine Drive according to city standards and approved by city staff."

Following further conversations with city staff, plaintiff constructed the intersection at a driveway angle of sixty degrees. The City thereafter advised plaintiff that it would not issue a certificate of occupancy for the mall expansion project or issue driveway and curb cut permits, on the grounds that the city council, in providing that plaintiff construct a "T" intersection, required that such intersection be constructed at a driveway angle of ninety degrees.

Judge Ferrell found that the minutes of 22 December 1987 were ambiguous in the requirement that plaintiff construct a "T" intersection according to city standards, and concluded and declared that plaintiff was entitled to construct the intersection at sixty degrees, subject to conditions not pertinent to this appeal. Judge Ferrell also found and concluded that plaintiff's construction of the west parking area reasonably met the requirements of the City and declared that plaintiff was entitled to construct and maintain this parking area as constructed. The City was ordered not to withhold a certificate of occupancy or driveway and curb cut permits.

From the judgment entered granting the relief sought by plaintiff, the City appeals.

*Riddle, Kelly & Cagle, P.A., by E. Glenn Kelly, for plaintiff-appellee.*

*Nesbitt & Slawter, by William F. Slawter; and Sarah Patterson Brison, Assistant City Attorney, for defendant-appellant.*

WELLS, Judge.

[1] By its first argument, the City challenges the trial court's finding that the minutes of the 22 December 1987 proceedings in the city council were ambiguous regarding the requirement that plaintiff construct a "T" intersection as part of the mall expansion and the trial court's concluding and declaring plaintiff to be entitled to construct and maintain the intersection of Brackettown Road and White Pine Drive at a driveway angle of sixty degrees. In addressing this issue, we note that the question of whether the City is authorized to regulate the manner of constructing driveway connections between private and public roads is not before us. We are here concerned only with the question of whether the City, in requiring plaintiff to construct a "T" intersection at the

R. L. COLEMAN & CO. v. CITY OF ASHEVILLE

[98 N.C. App. 648 (1990)]

junction of Brackettown Road and White Pine Drive as a condition for its approval of plaintiff's mall expansion, unambiguously indicated that such intersection be constructed at a driveway angle of ninety degrees. We hold that it did.

It is well settled that when the trial judge sits as factfinder, his findings of fact are binding if they are supported by any competent evidence in the record, but his conclusions of law are reviewable. *Wright v. Auto Sales, Inc.*, 72 N.C. App. 449, 325 S.E.2d 493 (1985). "A 'conclusion of law' is the court's statement of the law which is determinative of the matter at issue between the parties [and] . . . must be based on the facts found by the court[.]" *Montgomery v. Montgomery*, 32 N.C. App. 154, 231 S.E.2d 26 (1977).

The trial court's finding of fact number nine provides, in pertinent part:

The Minutes of December 22, 1987, of Defendant's City Council . . . are ambiguous in their requirement that the Mall construct a "T" intersection from Brackettown Road onto White Pine Drive according to "city standards."

This is plainly not a finding of fact but a conclusion of law. Hence, it is reviewable by this Court.

In support of the trial court's determination, plaintiff contends that the minutes of the 22 December 1987 city council meeting make no provision for a "ninety-degree angle" and that there was no discussion or mention in the meeting referring to a "T" intersection or the angle in which Brackettown Road would meet White Pine Drive. We disagree.

It is uncontroverted that at the time plaintiff's proposed mall expansion project was under consideration by the City Brackettown Road had been in existence since 1973, had been used throughout that time by the motoring public to enter and exit the mall, and intersected White Pine Drive at a driveway angle of approximately sixty-five to seventy degrees. Moreover, the minutes for 22 December 1987, contrary to plaintiff's assertion, plainly reflect that the question of changing the driveway angle of this intersection was before the city council, that the City's director of planning and zoning recommended that the driveway angle of the intersection be modified to create a "T" in order to give a greater sight distance and allow more time for motorists to decide which traffic lane to enter, and that public comment was received on this recommendation. The

minutes are devoid of any hint that the "T" intersection under consideration was other than perpendicular, *i.e.*, ninety degrees.

Plaintiff, however, asserts that the additional language in the minutes, "according to city standards," creates an ambiguity in that city standards, as set forth in section 30-3-15 of the Asheville Zoning Ordinance, permit construction of intersections with a driveway angle of between sixty and ninety degrees. We reject this argument as well.

"Ordinances must receive a reasonable construction and application, and the primary rule for their interpretation and construction is that the intention of the municipal legislative body is to be ascertained and given effect." *MacPherson v. City of Asheville*, 283 N.C. 299, 196 S.E.2d 200 (1973). It is true that section 30-3-15D.4 of the Asheville Zoning Ordinance allows a minimum driveway angle of sixty degrees. This, however, is but one of many design specifications — including grade, setback, curbing, and the like — that are detailed in section 30-3-15 governing driveway entrance construction generally. Additionally, we note by way of analogy that section 30-2-1 of the ordinance provides that "[e]xcept where specifically defined below, all words in this ordinance shall carry the standard dictionary meanings." Webster's Third New International Dictionary (1976) defines "T," in pertinent part, as "something having the shape of the letter T."

We are persuaded that the City's requirement that plaintiff construct a "T" intersection unambiguously indicated the City's intent that the previously existing, acute driveway angle of sixty-five to seventy degrees be changed to a perpendicular, "T" intersection, having a driveway angle of ninety degrees. This requirement thus disposed of that specification in the ordinance pertaining to driveway angle. The additional language in the minutes "according to city standards" plainly refers, not to driveway angle, but to the remainder of the specifications governing such driveway entrance construction. In the context of this case, the City's approval of plaintiff's mall expansion project contingent upon plaintiff's constructing a "T" intersection from Brackettown Road to White Pine Drive can have but one meaning: that plaintiff was required to change the driveway angle of this intersection to ninety degrees. Plaintiff, however, did not satisfy this requirement but instead constructed the intersection with a driveway angle that, at sixty degrees, is even more acute than the previously existing driveway

angle. The trial court therefore erred in concluding that the 22 December 1987 minutes were ambiguous and that plaintiff was entitled to construct the intersection of Brackettown Road and White Pine Drive with a driveway angle of sixty degrees.

[2] By its second argument, defendant contends that the trial court erred in finding and concluding that parking spaces constructed in the west parking area of the mall reasonably met the requirements of the site plan approval. The evidence, however, tends to show that the actual construction of the parking area deviated from the plans approved by the city council only in its realignment of the directional orientation of the individual parking spaces. There was no change in the total area set aside for parking in the west parking area, and the effect of the realignment was to cause a mere nine parking spaces in that area to be redistributed among the approximately four thousand total parking spaces available at the mall. Accordingly, the trial court did not err in finding and concluding that the parking area as actually constructed reasonably met the requirements established by the City.

In summary, we reverse the portions of the judgment ordering that plaintiff is lawfully entitled to construct the Brackettown Road-White Pine Drive intersection at an angle of sixty degrees and that the City may not withhold a certificate of occupancy, driveway permit, or curb cut permit because of such construction. In all other respects the trial court's judgment is affirmed.

Affirmed in part, reversed in part.

Judges PARKER and DUNCAN concur.