JONATHAN DUNBAR WESTON v. CAROLINA MEDICORP, INC., AND FORSYTH MEMORIAL HOSPITAL, INC., D/B/A FORSYTH MEMORIAL HOSPITAL

No. 9021SC677

(Filed 2 April 1991)

1. **Appeal and Error § 341 (NCI4th) — challenge to findings of fact — any competent evidence standard — assignment of error ineffective**

    Since the proper standard on appeal to challenge the trial court's findings of fact is the "any competent evidence" standard, but all of plaintiff's assignments of error with regard to the trial court's findings asserted that they were "clearly erroneous" — the federal standard for review of the trial court's findings of fact — plaintiff's assignments of error with regard to the findings of fact were ineffective to challenge the sufficiency of the evidence to support the findings.

    **Am Jur 2d, Appeal and Error § 839.**

2. **Constitutional Law § 105 (NCI4th) — doctor's hospital staff privileges revoked — due process violation claimed — no "state action" — claim not addressed**

    The court need not address plaintiff doctor's argument that defendants violated plaintiff's state and federal constitutional due process rights in suspending and revoking his hospital staff privileges, since "state action" is required to trigger the protections of constitutional due process provisions, and de-

fendant private, non-profit hospital did not engage in state action in disciplining plaintiff.

**Am Jur 2d, Constitutional Law §§ 821, 822, 824; Hospitals and Asylums § 10.**

3. **Hospitals § 6 (NCI3d)— revocation of doctor's hospital staff privileges—failure to follow hospital policy—no absolute discretion in doctor to withhold HIV test results**

There was no merit to plaintiff doctor's contention that N.C.G.S. § 130A-143 gave him the absolute discretion to decide whether to divulge information about HIV test results, and that defendants wrongfully, arbitrarily, or capriciously suspended and revoked plaintiff's hospital staff privileges because of his failure to follow hospital policy, since the statute does provide that all information that any person has the AIDS virus infection is "strictly confidential," but there are thirteen exceptions where release of the confidential information is permitted, one of them being release to "health care personnel providing medical care to the [infected] patient"; and the plaintiff was bound by the hospital's policy, which was consistent with N.C.G.S. § 130A-143, of identifying patients "as being potentially infectious."

**Am Jur 2d, Hospitals and Asylums §§ 10, 11.**

4. **Constitutional Law § 88 (NCI4th)— doctor's hospital staff privileges revoked—claims of retaliation and discrimination not considered**

Plaintiff doctor had no claim for discrimination under 42 U.S.C.S. § 1983 based on defendant hospital's suspension and later revocation of plaintiff's staff privileges because no state action was involved in the hospital's actions. Nor did plaintiff have a claim under 42 U.S.C.S. § 1981 for retaliation and discrimination in the making or enforcement of a contract where the trial court found that plaintiff had no contract with defendant hospital.

**Am Jur 2d, Civil Rights §§ 13, 18, 50; Hospitals and Asylums § 10.**

5. **Rules of Civil Procedure § 52 (NCI3d)— findings of fact written by attorney—adoption by court proper**

The trial court did not err in adopting verbatim defendant's proposed findings of fact and conclusions of law.

WESTON v. CAROLINA MEDICORP, INC.

[102 N.C. App. 370 (1991)]

**Am Jur 2d, Trial §§ 1256, 1257.**

**Propriety and effect of trial court's adoption of findings prepared by prevailing party. 54 ALR3d 868.**

APPEAL by plaintiff from judgment filed 22 November 1989 in FORSYTH County Superior Court by *Judge W. Douglas Albright.* Heard in the Court of Appeals 14 December 1990.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by Anthony H. Brett, for defendant-appellees.*

GREENE, Judge.

The plaintiff appeals the judgment filed 22 November 1989 wherein the trial court denied the injunctive relief sought by the plaintiff.

[1] In this case, the trial court sat as the factfinder. "It is well settled that when the trial judge sits as factfinder, his findings of fact are binding [on appeal] if they are supported by *any competent evidence* in the record, but his conclusions of law are reviewable." *R.L. Coleman & Co. v. City of Asheville,* 98 N.C. App. 648, 651, 392 S.E.2d 107, 108-09, *disc. rev. denied,* 327 N.C. 432, 395 S.E.2d 689 (1990) (emphases added); *see also* N.C.G.S. § 1A-1, Rule 52(c). Accordingly, the proper standard on appeal to challenge the trial court's findings of fact is the "any competent evidence" standard. Here, all of the plaintiff's assignments of error with regard to the trial court's findings assert that they are "clearly erroneous." The "clearly erroneous" standard is the federal standard for review of the trial court's findings of fact. Fed. R. Civ. P. 52(a); *Anderson v. Bessemer City,* 470 U.S. 564, 573-74, 84 L.Ed.2d 518, 528 (1985). The plaintiff's assignments of error with regard to the findings of fact are therefore ineffective to challenge the sufficiency of the evidence to support the findings under the "any competent evidence" standard of appellate review. Accordingly, the trial court's findings of fact are conclusive on this appeal. *See Sharpe v. Park Newspapers of Lumberton, Inc.,* 317 N.C. 579, 582-83, 347 S.E.2d 25, 28 (1986) (where plaintiff did not assign error to trial court's findings, they were conclusive).

WESTON v. CAROLINA MEDICORP, INC.

[102 N.C. App. 370 (1991)]

We summarize the trial court's pertinent findings as follows: The plaintiff is an African-American physician specializing in obstetrics and gynecology and has practiced his specialty in Winston-Salem, North Carolina, since 1979. In 1979, he was granted medical staff privileges at·Forsyth Memorial Hospital. The defendant Carolina Medicorp, Inc. [Medicorp], is a non-profit corporation which has owned the hospital's facilities since 1984. Defendant Forsyth Memorial Hospital, Inc. [Hospital], is a separate, private, non-profit corporation affiliated with Medicorp. The Hospital is the corporation which operates the hospital, and its board of trustees is the governing authority for the hospital.

Prior to 1984, Forsyth County owned the hospital's facilities. In 1983, the Forsyth County Commissioners voted to transfer the facilities to Medicorp, and the deed effectuating the transfer was executed and filed in January of 1984. The transfer was made pursuant to N.C.G.S. § 131E-8 (1988 & Supp. 1990) which mandates the operation of the hospital "as a community general hospital open to the general public" and the provision of medical services "to indigent patients as the municipality or hospital authority and the nonprofit corporation shall agree." As a condition of the transfer, the County Commissioners have the right to appoint the majority of the Hospital's board of trustees. Forsyth County has no other involvement in the operation of the Hospital. Forsyth County has not provided any funding to Medicorp or the Hospital since 1984. All of the actions complained of in this proceeding are ones taken by Hospital rather than Medicorp.

In 1986, the Hospital adopted infectious disease control policies for patients infected with the HIV (Human Immune Deficiency) virus. These policies "required a physician admitting a patient with the HIV infection to place the patient on blood and body fluid isolation, a status which identifies a patient as being potentially infectious and also requires the use of protective measures for health care personnel coming in contact with the patient."

In February of 1988, the plaintiff admitted a patient whom he had known to be infected with the HIV virus since 1987. In August of 1987, the plaintiff reconfirmed that the patient was infected with the HIV virus. During this patient's admission to the hospital in February of 1988, she was treated for premature labor and discharged. The plaintiff did not place the patient on blood and body fluid isolation, did not notify any of the health care person-

nel treating the patient that she was infected with the HIV virus, and did not enter any information in the patient's medical chart at the hospital indicating that she had this infectious condition. Later in the month, the patient returned to the hospital in labor and had a rapid delivery which was managed by a nurse.

The nurse who handled the "delivery did not have gloves on both of her hands as is required by the policy known as 'universal precautions' (which is recommended by the U.S. Center for Disease Control and is required by State communicable disease regulations and the Hospital's policies) due to the speed at which the events during the course of the delivery occurred." Once Hospital personnel learned that the patient had the HIV virus, members of the nursing staff became concerned that the plaintiff had not followed the Hospital's blood and body fluid isolation policy. At an administrative hearing conducted to determine if the plaintiff had violated Hospital policy, Dr. Weston testified and admitted that he had conducted a confirmatory test on the patient in August of 1987 which indicated that she did have the HIV virus. The hearing committee concluded that the plaintiff had violated the Hospital policy and disrupted hospital operations. The investigating committee recommended that the plaintiff be suspended from the Medical Staff for three months. The hearing committee presented its recommendations to the Executive Committee which unanimously approved the recommendation that Dr. Weston's privileges be suspended for three months. "While the Medical-Dental Staff Bylaws provided Dr. Weston with the right to appeal this recommendation to the Hospital's Board of Trustees, he chose not to do so."

In 1989, the plaintiff was involved in various incidents which raised questions concerning whether the Hospital should continue to allow the plaintiff to practice medicine at the hospital. In one incident, a patient died from excessive blood loss after a surgery performed by the plaintiff. Another incident involved the plaintiff's alleged mismanagement of a laparoscopy, which is "a procedure involving insertion of an instrument into a patient to remove an ectopic (outside of the uterus) pregnancy from an ovarian tube." Another incident involved an alleged improper, premature cesarean section which endangered the baby's life. Another incident involved the alleged dropping by the plaintiff of a baby on its head during delivery.

Based upon these events, the plaintiff was summarily suspended from the Medical Staff. The plaintiff appealed the summary suspension to the Executive Committee and to the Hospital's board of trustees. Both bodies affirmed the suspension pending a full investigation. A three-member investigating committee was appointed to investigate these events. After the investigation, the Executive Committee deliberated and recommended that the plaintiff's staff privileges "be revoked because his 'medical judgment is impaired at this time.'" The Executive Committee encouraged Dr. Weston to reapply for his privileges whenever he can demonstrate that his medical judgment has been restored and that he can comply with the qualifications for membership on the Medical-Dental Staff."

Based upon these findings, the trial court concluded, among other things, that the "Hospital's termination of plaintiff's Hospital Staff privileges was not 'state action,'" that the plaintiff did not have a contract with the Hospital, and that "[n]one of the actions challenged by plaintiff . . . were arbitrary, capricious, unreasonable, discriminatory, retaliatory or otherwise in violation of law." Based upon its conclusions, the trial court ordered "that the plaintiff have and recover nothing of the defendants . . . ."

---

The issues are whether (I) a private, non-profit hospital in suspending and revoking a physician's staff privileges engages in state action; (II) N.C.G.S. § 130A-143 (1990) granted the plaintiff the absolute right to decide whether to divulge information about a patient's HIV test results to other medical personnel; (III) the plaintiff may bring claims for retaliation and discrimination pursuant to 42 U.S.C.S. § 1981 (Law. Co-op. 1986); and (IV) a trial court may adopt the proposed findings of fact and conclusions of law prepared by an attorney.

I

[2] The plaintiff argues that the trial court erred in concluding that the defendants did not violate the plaintiff's state and federal constitutional due process rights in suspending and revoking the plaintiff's staff privileges. We note initially that the trial court found that "[a]ll of the actions complained of in this proceeding are ones taken by Forsyth Memorial Hospital, Inc. [Hospital], rather than Carolina Medicorp, Inc. [Medicorp]." As mentioned at the outset, we are bound by the trial court's findings. Therefore, we limit

our discussion to whether the Hospital violated the plaintiff's due process rights. Furthermore, the trial court found and concluded that the Hospital was a private, non-profit hospital. We are bound by the finding and we may not question the conclusion because the plaintiff did not properly assign error to it. N.C.R. App. P. 10.

"The Fourteenth Amendment of the [United States] Constitution provides in part that '[n]o State shall . . . deprive any person of life, liberty, or property without due process of law.'" *Blum v. Yaretsky*, 457 U.S. 991, 1002, 73 L.Ed.2d 534, 545 (1982). This Amendment "protects individuals only from governmental and not private action . . . ." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930, 73 L.Ed.2d 482, 491 (1982). Article 1, § 19 of the North Carolina Constitution provides in part that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." This Article, like the Fourteenth Amendment, was designed " 'to protect the individual from the State.' " *North Carolina Real Estate Licensing Board v. Aikens*, 31 N.C. App. 8, 13, 228 S.E.2d 493, 496 (1976) (citation omitted). Accordingly, "state action" is required to trigger the protections of the "synonymous" due process provisions of the Fourteenth Amendment to the United States Constitution and Article 1, § 19 of the North Carolina Constitution. *NCAA v. Tarkanian*, 488 U.S. 179, 191, 102 L.Ed.2d 469, 484 (1988) (Fourteenth Amendment does not protect individual from private conduct); *see Bulova Watch Co. v. Brand Distribs. of North Wilkesboro*, 285 N.C. 467, 474, 206 S.E.2d 141, 146 (1974) (due process expressions under federal and state constitutions are synonymous).

"In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *Tarkanian*, 488 U.S. at 192, 102 L.Ed.2d at 484-85. This is so because "the relationship between a private corporation and a state or local government may be such or the function performed by the corporation may be such that actions taken by the corporation may be governmental rather than private actions." *Briscoe v. Bock*, 540 F.2d 392, 395 (8th Cir. 1976) (private hospital terminating physician's staff membership and privileges). Here, the alleged state action by the Hospital involves the suspension and revocation of the plaintiff's staff privileges. Accordingly, for the Hospital's conduct to be classified as state action, the plaintiff must show that a sufficiently close

nexus exists between the State and the challenged action of the Hospital so that the Hospital's action " 'may be fairly treated as that of the State itself.' " *Yaretsky*, 457 U.S. at 1004, 73 L.Ed.2d at 546 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 42 L.Ed.2d 477, 484 (1974) ); *Lubin v. Crittenden Hosp. Ass'n*, 713 F.2d 414, 415 (8th Cir. 1983), *cert. denied*, 465 U.S. 1025, 79 L.Ed.2d 685 (1984) (private hospital placed physician on one-year probation).

Whether the Hospital's suspension and revocation of the plaintiff's staff privileges was "state action depends upon the specific facts and circumstances surrounding the challenged action." *Albright v. Longview Police Dep't*, 884 F.2d 835, 838 (5th Cir. 1989) (private hospital's termination of personnel director not state action). The required nexus may be shown where "the State creates the legal framework governing the conduct, . . . if it delegates its authority to the private actor, . . . or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior . . . ." *Tarkanian*, 488 U.S. at 192, 102 L.Ed.2d at 485 (citations omitted). The nexus may also be shown where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.' " *Yaretsky*, 457 U.S. at 1005, 73 L.Ed.2d at 547 (citation omitted). Because neither the State nor any local government created any legal framework governing the challenged conduct, delegated authority to the Hospital, or accepted any benefits from any alleged unconstitutional behavior, these methods for establishing the nexus do not apply. Furthermore, "[a]lthough health care is certainly an 'essential public service', it does not involve the 'exercise by a private entity of powers traditionally exclusively reserved to the State.' " *Modaber v. Culpeper Memorial Hosp., Inc.*, 674 F.2d 1023, 1026 (4th Cir. 1982) (citation omitted) (private hospital revoked physician's staff privileges); *see also Lubin*, 713 F.2d at 416; *Sides v. Cabarrus Memorial Hosp., Inc.*, 287 N.C. 14, 25-26, 213 S.E.2d 297, 304 (1975) ("construction, maintenance and operation of a public hospital by either a city or a county is a proprietary function"). Accordingly, the required nexus may not be established under the "public function" method either.

The plaintiff argues that state action should be found to exist for four separate reasons, each of which lacks merit. First, the General Assembly enacted N.C.G.S. § 131E-8 thus allowing and governing the conveyance of the hospital to Medicorp and granting Medicorp's power to operate the hospital. The fact that a state

statute governs the method of *conveying* municipal hospitals to private, non-profit corporations does nothing to explain how a private, non-profit hospital's suspension and revocation of staff privileges constitutes state action. *See Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989) (no state action where legislation authorized revocation of staff privileges); *Garst v. Stoco, Inc.*, 604 F. Supp. 326, 333-34 (E.D. Ark. 1985) (insufficient nexus where state statute required private hospital to have bylaws but state did not approve them and did not monitor hospital's actions taken pursuant to them).

Second, the label given to N.C.G.S. Chapter 131E, Article 2 is "Public Hospitals," and under N.C.G.S. § 143-318.10(b) (1990), the Hospital is a "public body." The label given Chapter 131E is irrelevant in determining whether a private, non-profit hospital's suspension and revocation of staff privileges constitutes state action. Likewise, the definition of a "public body" for purposes of the open meetings statute does not establish a sufficient nexus for state action.

Third, the county commissioners have the right to appoint the majority of the Hospital's board of trustees. The trial court found that this right was a "condition of the deed transferring the" hospital to Medicorp. The appointment right of some but not all of the trustees, though indicative of state action, does not alone compel the conclusion that the suspension and revocation of the plaintiff's staff privileges constituted state action in this case. Though Forsyth County appoints the majority of the Hospital's board, the trial court found that the "County has no other involvement in the affairs of the Hospital." The County does not fund the Hospital. The plaintiff does not argue and the record does not reveal that the County had any control over the board of trustees. Without any governmental control over the Hospital's board, the nexus between the County and the Hospital's revocation of the plaintiff's staff privileges is at best remote. *Lubin*, 713 F.2d at 416 (insufficient nexus where physician did not allege that state participated in disciplinary procedures); *see also Garst*, 604 F. Supp. at 333-34 (state did not approve bylaws nor did it monitor action taken pursuant to them).

Fourth, the statute requires the Hospital to operate as a community general hospital open to the public and to provide care to indigent patients. This fact does not transform a private, non-profit hospital's disciplinary decisions into state action. *Albright*,

884 F.2d at 841 (lease provision required private hospital to accept indigent patients); *see also Modaber*, 674 F.2d at 1026 (insufficient nexus where hospital implemented governmental program). Accordingly, because of the absence of state action, we need not address the plaintiff's arguments addressed at the alleged due process violations.

## II

[3] The plaintiff argues that the trial court committed prejudicial error in concluding that the defendants did not wrongfully, arbitrarily, or capriciously suspend and revoke the plaintiff's staff privileges. The plaintiff argues that N.C.G.S. § 130A-143 gives him the absolute discretion to decide whether to divulge information about HIV test results. On the basis of the alleged statutory right, the plaintiff argues that to the extent the defendants considered the plaintiff's exercise of this alleged statutory right in suspending and revoking his staff privileges, it acted wrongfully, arbitrarily, or capriciously in violation of *Claycomb v. HCA-Raleigh Community Hosp.*, 76 N.C. App. 382, 385-86, 333 S.E.2d 333, 336 (1985), *disc. rev. denied*, 315 N.C. 586, 341 S.E.2d 23 (1986).

The pertinent provisions of N.C.G.S. § 130A-143 read:

> All information and records, whether publicly or privately maintained, that identify a person who has AIDS virus infection or who has or may have a disease or condition required to be reported pursuant to the provisions of this Article shall be strictly confidential. This information shall not be released or made public except under the following circumstances:
>
> . . . .
>
> (3) Release is made to health care personnel providing medical care to the patient . . . .

North Carolina Gen. Stat. § 130A-143 mandates that all information that any person has the AIDS virus infection is "strictly confidential." However, the statute provides thirteen exceptions where release of the confidential information is permitted. One such exception permits release to "health care personnel providing medical care to the [infected] patient." The statute does not mandate release of this information to health care providers. Therefore, were it not for the Hospital's blood and body fluid isolation policy, the plaintiff would be correct in his argument that the release

of this information was within his discretion. However, the plaintiff was bound by the Hospital's policy of identifying patients "as being potentially infectious," and that policy is consistent with N.C.G.S. § 130A-143. Therefore, the Hospital's actions in disciplining the plaintiff for his failure to comply with the policy was not a wrongful, arbitrary, or capricious act.

### III

[4] The plaintiff argues (1) that the trial court erred in finding and concluding that the defendants' actions in suspending the plaintiff's staff privileges for three months and then in revoking his staff privileges altogether were not retaliatory for purposes of 42 U.S.C.S. § 1981, 42 U.S.C.S. § 1983 (Law. Co-op. 1986), and the First and Fourteenth Amendments to the United States Constitution, and (2) that the trial court committed prejudicial error in concluding that the Hospital did not racially discriminate against the plaintiff pursuant to 42 U.S.C.S. § 1981 when it revoked his staff privileges.

Having concluded that there was no state action involved in the Hospital's actions, we do not address the merits of the 42 U.S.C.S. § 1983 claim because such a claim requires state action. *Tarkanian*, 488 U.S. at 191, 102 L.Ed.2d at 484 (state action required under § 1983); *West v. Atkins*, 487 U.S. 42, 48, 101 L.Ed.2d 40, 48-49 (1988) (violator must act under color of state law). We do not address the federal constitutional claims for the same reason. *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1163-64 (10th Cir. 1986) (state action required for claims under First and Fourteenth Amendments); *Fike v. United Methodist Children's Home of Va.*, 709 F.2d 284, 286-87 (4th Cir. 1983) (state action required for First Amendment claim). Section 1981 affords a remedy against retaliation and discrimination in private employment, thus state action is not a prerequisite for a § 1981 action. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60, 44 L.Ed.2d 295, 301 (1975).

To recover on a 42 U.S.C.S. § 1981 claim, the plaintiff was required to prove, among other things, "that he engaged in activity protected by § 1981 . . . ." *Goff v. Continental Oil Co.*, 678 F.2d 593, 599 (5th Cir. 1982); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). The activities protected are the making and enforcement of contracts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 105 L.Ed.2d 132, 150 (1989). "Where an alleged act of discrimination does not involve the impairment of one of

**WESTON v. CAROLINA MEDICORP, INC.**

[102 N.C. App. 370 (1991)]

these specific rights, [i.e., the making and enforcement of contracts,] § 1981 provides no relief." *Id.*

The plaintiff argues that the prohibited acts of retaliation and discrimination occurred in the course of disciplinary action taken against him by the Hospital. The plaintiff does not argue that he was retaliated or discriminated against by the defendants in the making of a contract. Furthermore, the trial court concluded that the plaintiff did not have a contract with the Hospital. The plaintiff did not assign error to this conclusion. Therefore, the plaintiff does not have a claim for retaliation or discrimination in the enforcement of a contract. Accordingly, the plaintiff does not have a 42 U.S.C.S. § 1981 claim for retaliation or discrimination.

IV

[5] The plaintiff also argues that the trial court's fact-finding process was erroneous because the trial court virtually adopted verbatim the defendants' proposed findings of fact and conclusions of law. We disagree. Where the trial court adopts verbatim a party's proposed findings of fact, those findings will be set aside on appeal only where there is no competent evidence in the record to support them. *See* N.C.G.S. § 1A-1, Rule 52; *Johnson v. Johnson*, 67 N.C. App. 250, 256-57, 313 S.E.2d 162, 166 (1984) (proper for trial court to direct attorney to prepare proposed findings and conclusions).

We have reviewed the plaintiff's remaining arguments and find them to be without merit. Accordingly, the judgment of the trial court is

Affirmed.

Judges PARKER and COZORT concur.