NORTH CAROLINA REAL ESTATE LICENSING BOARD v. DAVID AIKENS, INDIVIDUALLY AND T/A RENTEX

No. 7621SC310

(Filed 6 October 1976)

Brokers and Factors § 8; Constitutional Law § 12— seller of property
    lists — no real estate broker — constitutionality of statute
        The amendment to G.S. 93A-2(a) enacted by Session Law 1975,
    c. 108 which defines a real estate broker as one who for a fee sells
    the names of persons or others who have real estate for rental, lease
    or sale is unconstitutional in that it is repugnant to Art. I, §§ 1 and 19
    of the N. C. Constitution, since it is an arbitrary and irrational exer-
    cise of the police power to require a person who sells such lists to
    obtain a license as a real estate broker after first satisfying the Real
    Estate Licensing Board that he possesses the required knowledge of
    mortgages, suretyships, escrow agreements and other real property
    subjects, none of which are reasonably relevant to his business activity.

Appeal by defendant from *Rousseau, Judge.* Order entered 20 February 1976, Superior Court, FORSYTH County. Heard in the Court of Appeals 26 August 1976.

The plaintiff Board alleged that defendant Aikens was engaging in the business of a real estate broker without a license in violation of G.S. 93A-1 and sought both preliminary and permanent injunctive relief under G.S. 150-31.

The basic facts were not in dispute, and were stipulated by the parties as follows:

"1. That defendant is a resident of Forsyth County, North Carolina, trades as 'Rentex' and owns the Rentex offices at 110 West 5th Street, Winston-Salem, North Carolina.

2. That on October 10, 1975, E. H. Jenkins entered the above offices of Rentex and, in return for $20.00, pur-

Real Estate Licensing Board v. Aikens

chased from Rentex an agreement (policy no. 670B) entitling him to see a list of real estate for rent by others, said list belonging to Rentex.

3. That defendant does not currently hold, nor has he ever held, a real estate broker's license or salesman's license issued by the North Carolina Real Estate Licensing Board."

The Board presented an affidavit of Everette H. Jenkins, who was employed by the Board as a field representative. As set forth in the second stipulation of fact, he had purchased for $20.00 on 10 October 1975 a "policy" from Rentex. In essence the policy provided space for the prospective renter to describe the type of rental property sought, and upon presentation, it entitled the holder for three months from date of purchase to see lists of available rental property at any Rentex office. In addition to the "policy," Mr. Jenkins received two blank "rental listings" forms on which he could copy information from Rentex's master list, such as type of structure, address, phone number of landlord, rent, and whether children or pets were allowed. He also received an index of codes used on the master list, a city map, a questionnaire card, and a change of address card. On that date Mr. Jenkins was given access to eight sheets containing about 147 listings. He returned to the same office on 20 October 1975, received access to eight pages containing about 100-125 listings from which he copied information on four pieces of rental property.

The Board also presented an affidavit of Roy Campbell, an owner of rental property in Winston-Salem. He stated that he had placed an advertisement to rent his property in a Winston-Salem newspaper, that Rentex had contacted him requesting to list his property at no charge, and that he consented.

Plaintiff filed its complaint on 1 December 1975. After hearing, on 20 February 1976, the trial court issued a preliminary injunction ordering defendant "to immediately cease and desist all activities as real estate brokers . . . [including] the practice of selling for a fee lists of names or addresses of others who have real estate for rental, lease, or sale, unless and until such broker's . . . license(s) be issued by the North Carolina Real Estate Licensing Board."

On the same day an order was issued staying the preliminary injunction pending this appeal by defendant.

*Attorney General Edmisten by Associate Attorney James E. Scarbrough.*

*Charles J. Alexander II for defendant appellant.*

CLARK, Judge.

In its complaint plaintiff Board alleges that it seeks injunctive relief under G.S. 150-31. This statute was repealed by Session Laws 1973, c. 1331, s. 1, originally effective 1 July 1975, but extended to 1 February 1976 by Session Laws 1975, c. 69, s. 4. However, the repealing act excepted pending hearings. Session Laws 1973, c. 1331, s. 4. This action was instituted on 1 December 1975. We note that the new Administrative Procedure Act, enacted in part to replace former G.S. Chapt. 150, contains no authorty for injunctive relief applicable to the plaintiff Board and other boards who depended upon G.S. 150-31 for such authority.

G.S. Chapt. 93A, entitled "Real Estate Brokers and Salesmen," regulates the real estate business. The Chapter was declared constitutional in *State v. Warren,* 252 N.C. 690, 114 S.E. 2d 660 (1960). "Its purpose is to protect sellers, purchasers, lessors and lessees of real property from fraudulent or incompetent brokers and salesmen. It must be construed with a regard to the evil which it is intended to suppress." *McArver v. Gerukos,* 265 N.C. 413, 416-17, 144 S.E. 2d 277, 280 (1965).

G.S. 93A-2(a) defines a real estate broker as follows:

*"Definitions and exceptions.*— (a) A real estate broker within the meaning of this Chapter is any person, partnership, association, or corporation who for a compensation or valuable consideration or promise thereof lists or offers to list, sells or offers to sell, buys or offers to buy, auctions or offers to auction (specifically not including a mere crier of sales), or negotiates the purchase or sale or exchange of real estate, or who leases or offers to lease, or who sells or offers to sell leases of whatever character, or rents or offers to rent any real estate or the improvement thereon, for others. *A broker shall also be deemed to include a person, partnership, association, or corporation who for a fee sells or offers to sell the name or names of persons, partnerships, associations, or corporations who have real estate for rental, lease, or sale."* (Emphasis added.)

The last sentence of subsection (a) was added by Session Laws 1975, c. 108, and became effective upon ratification on 7 April 1975. The defendant questions the constitutionality of this amendment on the ground that it regulates an ordinary trade or occupation contrary to the provisions of the North Carolina Constitution, art. I, secs. 1 and 19.

The defendant's business activity consists only of selling for a modest fee the addresses of property for rent, some information about the features of the properties, and the phone numbers of the lessors. There is no indication that he counsels or advises the customers. He charged the lessor no fee for listing the property. There is no further contact with the customer. Nevertheless, this activity is clearly within the definition of real estate broker set out in the last sentence of G.S. 93A-2(a).

The exercise of the police power of the State in the regulation of certain sectors of the economy must be reasonably related to the protection of the health, morals, safety or general welfare of the public. *Roller v. Allen,* 245 N.C. 516, 96 S.E. 2d 851 (1957). When there is no reasonable relationship, the courts of this State have not hesitated to strike down regulatory legislation as repugnant to the State Constitution. *Roller v. Allen, supra,* (tile contractors); *State v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731 (1949), (photography); *State v. Harris,* 216 N.C. 746, 6 S.E. 2d 854 (1940), (dry cleaning). And in *Palmer v. Smith,* 229 N.C. 612, 51 S.E. 2d 8 (1948), it was held that duplicating ophthalmic lenses and furnishing frames were purely mechanical processes which did not constitute the practice of optometry, and that the legislature could not extend the definition of a trade or occupation to include ordinary activities which do not demand those special skills for which regulation is required nor have a substantial relation to the public health, safety, or welfare.

We find significant to this case the rationale in *State v. Warren, supra,* which held valid the regulation of real estate brokering. There the court noted two aspects of real estate brokering which permitted regulation under the police power: (1) the characteristics of trust and confidence in the relationship between broker and client, which provide opportunities for collusion to extract illicit gains and which make the bond analogous to that between attorney and client; and (2) the economic significance of the real estate business, which was

similar to that of the banking industry. The court pointed out that mismanagement of either could produce widespread distress and unrest, and that the need for competence in those acting as intermediaries in either field was particularly acute.

The business activity of the defendant in the sale of a list of addresses of property for rent and the telephone numbers of the lessor does not involve a confidential relationship with the customers nor negotiations or other acts as an intermediary. An established and accepted definition of a broker is "one who is engaged for others, on a commission, to *negotiate* contracts relative to property." 12 C.J.S. Brokers, § 1 (1938). (Emphasis added.)

The key word in this and other accepted definitions of a broker is "negotiate." In his business the defendant does not negotiate; he provides information. The definition of a real estate broker in the last sentence of G.S. 93A-2(a) is a sharp and dangerous detour from any established and accepted definition and is so broad as to include the classified ad section of a newspaper and the rental guide of a municipal chamber of commerce.

It is an arbitrary and irrational exercise of the police power to require the defendant to obtain a license as a real estate broker after first satisfying the plaintiff Board that he possessed the required knowledge of mortgages, suretyships, escrow agreements and other real property subjects, none of which is reasonably relevant to his business activity. In *Real Estate Commission of Maryland v. Phares,* 268 Md. 344, 302 A. 2d 1 (1973), the court held that an information service virtually identical to that involved in the case before us did not constitute real estate brokering. Statutory amendments which explicitly defined advertisers and compilers of property information as real estate brokers were held unconstitutional in *United Interchange v. Spellacy,* 144 Conn. 647, 136 A. 2d 801 (1957), and *United Interchange, Inc. v. Harding,* 154 Me. 128, 145 A. 2d 94 (1958).

It is clear that defendant's activities do not fall within those which the legislature may constitutionally regulate as constituting the practice of real estate brokering. The reason for this conclusion is simple but profound. It has been expressed by the courts of this State many times in upholding the rights of a free people to live without undue regulation, but probably nowhere has it found a more eloquent expression than in *State*

*v. Ballance, supra.* In an opinion worthy of re-reading, Ervin, J., wrote that the founding fathers of this State "possessed an acute awareness of the long and bitter struggle of the English speaking race for some substantial measure of dignity and freedom for the individual. They loved liberty and loathed tyranny, and were convinced that government itself must be compelled to respect the inherent rights of the individual if freedom is to be preserved and oppression is to be prevented. In consequence, they inserted in the basic law a declaration of rights designed chiefly to protect the individual from the State." 229 N.C. at 768.

Two provisions of our State Constitution contain such protection and are relevant here. Art. I, sec. 1, declares that among the inalienable rights of the people are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness. Art. I, sec. 19 declares that no person shall be deprived of life, liberty, or property but by the law of the land. These fundamental provisions guarantee the right to pursue ordinary and simple occupations free from governmental regulation. *State v. Warren, supra.*

For the reasons set forth, we hold that the amendment to G.S. 93A-2(a) enacted by Session Laws 1975, c. 108, is unconstitutional as repugnant to art. I, secs. 1 and 19 of the North Carolina Constitution.

Reversed and remanded for dismissal of the action.

Judges MORRIS and VAUGHN concur.