TELEFLEX INFORMATION SYSTEMS, INC., PLAINTIFF v. DAVID J. ARNOLD, JR., DEFENDANT, AND DAVID J. ARNOLD, JR., THIRD-PARTY PLAINTIFF v. VANGUARD CELLULAR SYSTEMS, INC., THIRD-PARTY DEFENDANT

No. COA96-1067

(Filed 6 April 1999)

## 1. Employer and Employee— at-will employment contract— action for wrongful termination—public policy—not extended

The trial court did not err by granting summary judgment against Arnold (the original defendant who counterclaimed against the original plaintiff and then brought a third-party complaint against the original plaintiff's parent company, including many of the same claims) on a claim for wrongful termination of an at-will employment contract where Arnold alleged violation of public patent policy, the fruits of his labor clause of the North Carolina Constitution, the open door clause of the North Carolina Constitution, and his right to free speech. The Court of Appeals declined to expand public policy exceptions to essentially private contract disputes.

## 2. Employer and Employee— breach of implied covenant of fair dealing—summary judgment

The trial court did not err by granting summary judgment for Arnold on a claim against his employer for breach of an implied covenant of fair dealing in the context of an at-will employment contract.

### 3. Employer and Employee— interference with prospective economic relations—no action

The trial court did not err by granting summary judgment for Arnold on a claim for interference with prospective economic relations arising from a dispute over ownership of software. There is no basis for believing that a cause of action exists in North Carolina for interference with prospective contractual relationships.

Appeal by David J. Arnold, Jr., third-party plaintiff, from judgment entered 11 March 1996 by Judge W. Steven Allen, Sr., in Guilford County Superior Court. Heard in the Court of Appeals 16 February 1999.

This case arises out of a controversy between Teleflex Information Systems, Inc. (Teleflex), and David J. Arnold, Jr. (Arnold), over the ownership of certain methods and processes Arnold developed, or invented, while an employee of Teleflex. Teleflex is the wholly owned subsidiary of Vanguard Cellular Systems, Inc. (Vanguard). Teleflex instituted this action seeking an injunction from the trial court to prevent Arnold from divulging any trade secrets of Teleflex; seeking a declaration that Arnold was "hired to invent" the software in question, and a declaration that Teleflex owns all rights, including intellectual property rights, in the software; and seeking damages. Arnold counterclaimed, seeking similar relief against Teleflex and seeking damages for wrongful termination of his employment, among other things. Arnold brought a third-party complaint against Vanguard, which included many of the same claims he asserted against Teleflex. The nine causes of action in his third-party complaint against Vanguard included claims for wrongful termination of employment [Count II], breach of the duty of fair dealing [Count IV], and interference with prospective economic relations [Count V]. On motion of Vanguard, the trial court granted summary judgment on Counts II, IV, and V of Arnold's third-party complaint, certified there was "no just cause for delay," and Arnold appealed to this Court from the grant of summary judgment.

*Upchurch & Galifianakis, by Nick Galifianakis; and Lee L. Corum, for third-party plaintiff-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by William Sam Byassee, for third-party defendant-appellee.*

HORTON, Judge.

### A.  Wrongful Termination of Employment [Count II]

[1] During the time Arnold was an at-will employee of Teleflex or Vanguard, or both, Arnold developed a "new batch billing architecture." Arnold contends, and Vanguard denies, that the new process resulted from work Arnold did on his own time, without any assistance from Vanguard or its employees, and that he is the sole owner of the process or "invention." Arnold agrees that he was an "at-will" employee of Vanguard, but argues that he was fired by Vanguard on 28 January 1994 in violation of the public policy of this State for refusing to sign a document acknowledging that he claimed no ownership interest in the process. Although there is a continuing factual dispute whether Arnold was in fact an employee of Vanguard, counsel for Vanguard stipulated in oral argument that Arnold could be considered an employee of Vanguard for purposes of this appeal.

Although the discharge of an employee-at-will normally does not support an action for wrongful termination of employment, North Carolina courts have developed a public policy exception to the general rule. There is no "bright-line" test for determining when the termination of an at-will employee violates public policy. Our Supreme Court held in *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992), that:

> [a]lthough the definition of "public policy" approved by this Court does not include a laundry list of what is or is not "injurious to the public or against the public good," at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.

*Id.* at 353, 416 S.E.2d at 169 (footnote omitted). The plaintiff employee in *Amos* was fired because she refused to work for less than the statutory minimum wage. The Court held that "defendants violated the public policy of North Carolina by firing plaintiffs for refusing to work for less than the statutory minimum wage." *Id.* at 354, 416 S.E.2d at 170.

Plaintiff alleges four public policy violations arising from termination of his at-will employment with Vanguard. Arnold contends that his discharge violates "public patent policy," as set out in Article I, § 8, cl. 8 of the U.S. Constitution; that his termination denies him the right to the fruits of his labors as found in Article I, § 1 of the N.C.

Constitution; that the action of Vanguard in terminating his employment operates to bar the courthouse door in violation of Article I, § 18 of the N.C. Constitution; and that his discharge violates his rights to free speech as guaranteed by both the U.S. and N.C. Constitutions. We disagree but will examine each of appellant's arguments.

### Public Patent Policy

Plaintiff contends that defendant terminated his employment in violation of a "public patent policy." He contends that Article I, § 8, cl. 8 of the U.S. Constitution confers upon him a right to protect his inventions, and to terminate his employment in light of his alleged right violates the Constitution. He also claims that defendant's conduct harms the public at large because to deny plaintiff the ability to file a patent is to delay or deny the public's right to the future use of his inventions. In its brief, defendant cites Article I, § 8, cl. 8, which provides that "congress shall have power . . . [t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries[.]" Defendant contends that the language of Article I, § 8, cl. 8 confers no patent right upon plaintiff, but rather grants Congress the power to enact laws that create property rights in inventions. We agree with defendant's contention, in light of the fact that after the Constitution was ratified, Congress passed the Patent Act in 1790. We follow the holdings of other jurisdictions that the "Patent Clause" of the U.S. Constitution "authorizes Congress to enact the patent laws, but does not confer any rights by itself upon an individual." *Brosso v. Devices for Vascular Intervention, Inc.*, 879 F. Supp. 473, 478, *aff'd*, 74 F.3d 1225 (E.D. Pa. 1995). We decline to create a "public patent policy" exception to the employment at-will doctrine.

### Denial of the Fruits of His Labor

Plaintiff further contends that defendant's conduct violates public policy as promoted under the North Carolina Constitution. Article I, § 1 of the N.C. Constitution guarantees all citizens of North Carolina "certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." He claims that defendant terminated him in an effort to deny him "the enjoyment of the fruits" of his own labor. Defendant contends that Article I, § 1 creates no interest which limits the employment at-will doctrine, and argues that the constitutional provision guarantees to an individual only the right to pursue ordinary and simple occupations free from government regulation. In *Real Estate*

*Licensing Board v. Aikens*, 31 N.C. App. 8, 228 S.E.2d 493 (1976), this Court determined that an amendment to our statutes regulating real estate brokers and requiring their licensure was unconstitutional as being overly broad, because the definition contained in the amendment purported to regulate business activities such as those of defendant, which "consist[ed] only of selling for a modest fee the addresses of property for rent, some information about the features of the properties, and the phone numbers of the lessors." *Id.* at 11, 228 S.E.2d at 495. This Court held, in part, that to regulate the defendant, and others like him, as real estate brokers was "a sharp and dangerous detour from any established and accepted definition" of real estate broker. *Id.* at 12, 228 S.E.2d at 496. In *Aikens*, the defendant argued that such regulation violated several provisions of our State Constitution, including Article I, § 1. We agreed, holding that the "fundamental provisions" of our State Constitution, such as Article I, § 1, were inserted to "guarantee the right to pursue ordinary and simple occupations free from *governmental* regulation." *Id.* at 13, 228 S.E.2d at 496 (emphasis added). *See also State v. Ballance*, 229 N.C. 764, 768, 51 S.E.2d 731, 734 (1949), in which Justice Ervin eloquently observed that the declaration of rights in our State Constitution was inserted "chiefly to protect the individual *from the State.*" *Id.* (emphasis added). Here, Arnold does not seek redress for any governmental action, and the cited provision of the State Constitution does not give him a remedy against a corporate defendant in an essentially private dispute over the ownership of property. We agree with defendant's position for the above reasons, and find that Article I, § 1 of the North Carolina Constitution does not apply to plaintiff's claim.

Barring the Courthouse Door

Plaintiff contends that defendant's conduct violates public policy as promoted under Article I, § 18 of the North Carolina Constitution. The section provides that:

> All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.

Plaintiff contends that, when defendant learned that plaintiff consulted a patent attorney and asserted his legal rights as an inventor, defendant made an effort to bar plaintiff from asserting his rights in court by confronting plaintiff with two options: either relinquish his ownership rights, or face termination of employment. Defendant con-

tends that the very fact plaintiff has asserted his claims in a court of law contradicts his own argument that defendant has somehow barred plaintiff a judicial remedy. We agree with defendant's contention, and we find no evidence that defendant illegally prohibited plaintiff from asserting his rights in a court of law.

### Right to Free Speech

Plaintiff contends that defendant violated public policy by denying him his constitutionally protected right to free speech. He contends that defendant abridged his right to claim ownership of his inventions, and that defendant terminated his employment because he refused to disavow those rights. Defendant contends there is no free speech interest to be protected here; no free speech rights are implicated in a dispute between an employee and a private employer. If "state action" is responsible for restricting speech, then there is a potential constitutional violation. *See Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied*, 506 U.S. 985, 121 S.E.2d 431 (1992). Defendant contends that, as a private entity, it is allowed to abridge plaintiff's free speech rights without violating public policy. We agree with defendant's contention for the above-stated reasons, and we find no public policy violation here.

In determining whether to enlarge the scope of the public policy exceptions to the employment-at-will doctrine, we must focus on the *public* interests involved. In *McLaughlin v. Barclays American Corp.*, plaintiff asked this Court "to recognize, as a public-policy exception to the employee-at-will doctrine, a cause of action for wrongful discharge when the termination results from the employee's use of self-defense." 95 N.C. App. 301, 304, 382 S.E.2d 836, 839, *cert. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989). We noted in *McLaughlin* that " '[p]ublic policy' is a 'vague expression' but has been defined as the principle of law holding that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 305, 382 S.E.2d at 839 (citations omitted). After analyzing the leading North Carolina cases of *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), and *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. reviews denied*, 314 N.C. 331, 333 S.E.2d 490 and *disc. review denied*, 314 N.C. 331, 335 S.E.2d 13 (1985), we stated:

> In each case, our courts focused on the *potential harm to the public at large* if those instructions [i.e., to give perjured testi-

mony in *Sides* and to violate the state and federal highway safety regulations in *Coman*] were obeyed. Similar public-policy implications are not present in Mr. McLaughlin's case. We do not perceive the kind of deleterious consequences for the general public, if we uphold Barclays' action, as might have resulted from decisions favorable to the employers in *Sides* and *Coman.*

*McLaughlin,* 95 N.C. App. at 306, 382 S.E.2d at 840 (emphasis added). Here, we do not find the "potential harm to the public at large" as in *Sides, Coman,* and their successors. In those cases, the defendant-employer encouraged the plaintiff-employee to violate some law or risk being fired. In the case before us, the evidence does not suggest that Vanguard encouraged Arnold to violate any law. We know of no law requiring the plaintiff to claim an ownership interest in his inventions or to file a patent application. We decline to expand the public policy exceptions to essentially private contract disputes such as this. The assignment of error is overruled.

### B. Breach of Duty of Fair Dealing [Count IV]

[2] Arnold contends that North Carolina recognizes a cause of action for an employer's alleged breach of an implied covenant of fair dealing in the context of an at-will employment. In support of his contention, Arnold cites *Speck v. N.C. Dairy Foundation,* 64 N.C. App. 419, 307 S.E.2d 785 (1983), *reversed,* 311 N.C. 679, 319 S.E.2d 139 (1984); and *Coman,* 325 N.C. at 174-75, 381 S.E.2d at 446-47. *Speck* provides no support for Arnold's argument, however. *Speck* involved the claim by two professors that they had an interest in a secret scientific process which made possible the production of "Sweet Acidophilus" milk, and which process they discovered while employed by North Carolina State University. The trial court in *Speck* granted summary judgment for the defendants, and this Court reversed, holding that there was a question of fact about the existence of a fiduciary relationship between plaintiffs and the defendants. In reversing the decision of this Court, the Supreme Court held that the plaintiffs never had any interest in the process which they developed while employed by the University: "As the secret process in question belonged to the University immediately upon its discovery by the plaintiffs, the plaintiffs never possessed any interest cognizable in equity or at law in the process." *Speck,* 311 N.C. at 687, 319 S.E.2d at 144. Therefore, defendants never stood in a fiduciary relationship with the plaintiffs with regard to their discovery. *Id.*

In *Coman*, our Supreme Court stated that courts in other states "have recognized wrongful discharge theories characterized either as the bad faith exception to the at-will doctrine or under the implied covenant of good faith and fair dealing." *Coman*, 325 N.C. at 177, 416 S.E.2d at 173 (citation omitted). In *Amos*, 331 N.C. 348, 416 S.E.2d 166, however, the Supreme Court stated that the above-quoted statements from *Coman* were "dicta," and specifically stated that the Court "did not recognize a separate claim for wrongful discharge in bad faith." *Id.* at 360, 416 S.E.2d at 173. The trial court properly entered summary judgment on this claim for relief.

C. Interference with Prospective Economic Relations [Count V]

**[3]** Our Supreme Court set out the elements of tortious interference with contract in *United Laboratories, Inc. v. Kuykendall*:

> The tort of interference with contract has five elements: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954).

322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Plaintiff contends, however, that the interference is with his "prospective" contractual relationships. In *EEE-ZZZ Lay Drain Co. v. N.C. Dept. of Human Resources*, 108 N.C. App. 24, 422 S.E.2d 338 (1992), *overruled on other grounds*, 347 N.C. 97, 489 S.E.2d 880 (1997), this Court reversed the trial court's denial of summary judgment, holding in part that "[p]laintiff was unable to point to any specific instance when these acts [*i.e.*, interference with prospective contractual relations] occurred, and this Court is unable to find any evidence of such in the record. *We find no basis for believing that such a cause of action even exists in North Carolina.*" *Id.* at 31, 422 S.E.2d at 343 (emphasis added). Likewise, in the case before us, Arnold cannot point to any particular prospective relationships with which Vanguard tortiously interfered, and the trial court's grant of summary judgment must be affirmed. Arnold is not without a remedy, however. If he ultimately prevails at trial, he may seek damages from Vanguard for wrongfully obtaining an injunction against him. N.C. Gen. Stat. § 1A-1, Rule 65(e) (1990).

In summary, we affirm the grant of summary judgment by the trial court as to all three counts which are the subject of this appeal.

Affirmed.

Judges GREENE and LEWIS concur.