UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALBERT L. FREEMAN,
　　　　　　　*Plaintiff-Appellant,*

v.

DUKE POWER COMPANY, a Division
of Duke Energy Corporation; DUKE
ENERGY CORPORATION,
　　　　　　　*Defendants-Appellees.*

No. 03-2146

ALBERT L. FREEMAN,
　　　　　　　*Plaintiff-Appellant,*

v.

CINDY THAXTON; GEORGE KWASCHA,
　　　　　　　*Defendants-Appellees.*

No. 03-2147

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CA-00-665-1; CA-02-630-1)

Argued: June 4, 2004

Decided: September 27, 2004

Before WIDENER and SHEDD, Circuit Judges, and
David R. HANSEN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Fred Thurman Hamlet, Sr., Greensboro, North Carolina, for Appellant. Dena Beth Langley, NEXSEN PRUET ADAMS KLEEMEIER, P.L.L.C., Greensboro, North Carolina, for Appellees. **ON BRIEF:** Brian S. Clarke, NEXSEN PRUET ADAMS KLEEM-EIER, P.L.L.C., Greensboro, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

The district court dismissed both of Albert Freeman's state law actions, one against Duke Power Company (Duke Power) and one against Cindy Thaxton and George Kwascha, on the bases that all of the state law claims raised in the two cases were either preempted by § 301 of the Labor Management Relations Act (LMRA) and failed to state claims under the LMRA, or, if not preempted, failed to state a claim under state law. Freeman appeals, and we affirm.

I.

Because the district court granted the defendants' motions to dismiss the plaintiff's complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we take the allegations in the complaints as true and construe the facts in the light most favorable to the plaintiff. *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002). Albert Freeman worked for Duke Power as a Transmission Line Helper and as a Distribution Line Technician C from 1983 until 1999 pursuant to a collective bargaining agreement (CBA) between Duke Power and Freeman's union, Local Union 962, International Brotherhood of Electrical Workers (Union). In 1984, Freeman obtained a limited electrical contractor's license and "moonlighted" as an electrician

during his off-duty time performing small electrical jobs. Duke Power was aware of Freeman's moonlighting activities and took no employment action against him between 1984 and 1994.

In January 1994, Freeman was suspended and discharged from employment as a lineman "for allegedly removing a service drop and meter and disconnecting service to a customer without authorization from Duke Power Company." (J.A. at 11-12.) The Union filed a grievance on Freeman's behalf pursuant to the grievance procedures of the CBA. In settlement of the grievance, Duke Power, the Union, and Freeman entered into a Grievance Resolution, under which Duke Power agreed to reinstate Freeman to his lineman position, the Union agreed to withdraw the grievance, and Freeman agreed not to engage, directly or indirectly, in the business of electrical contracting while employed with Duke Power. The Grievance Resolution provided that Duke Power could discharge Freeman if he engaged in electrical contracting, and that the discharge decision would be final and would not be subject to the grievance procedures of the CBA in effect at the time of any future discharge.

In June 1996, Duke Power suspended and proposed to discharge Freeman a second time, asserting that Freeman violated the Grievance Resolution by engaging in electrical contracting. Freeman asserted that he did not violate the Grievance Resolution. In settling the dispute, the Union, Duke Power, and Freeman entered into an Amendment to the Grievance Resolution (Amendment) on July 3, 1996. The Amendment prohibited Freeman from being or becoming employed on a full- or part-time basis with any entity engaged in the business of electrical contracting. In the Amendment, Duke Power agreed not to terminate Freeman for the then current alleged violation of the Grievance Resolution, and Freeman agreed not to engage in the business of electrical contracting in the future. The Amendment provided that Duke Power could terminate Freeman's employment if he violated the Amendment, and that such termination would be final and would not be subject to the arbitration or grievance procedures under the CBA then in effect. In July 1999, Duke Power suspended and ultimately discharged Freeman for allegedly violating the Amendment. The Union declined to file a grievance for Freeman.

Freeman brought an action in North Carolina state court against Duke Power, alleging breach of contract, wrongful discharge, viola-

tions of North Carolina's constitution, and bad faith discharge. He brought a separate state court action against Cindy Thaxton and George Kwascha, his immediate supervisors, for interference with contract and violation of North Carolina's unfair and deceptive trade practices act. The defendants in both cases removed the cases to federal court and filed motions to dismiss the cases for failure to state a claim. The defendants also sought to consolidate the cases in federal court. Freeman resisted the motions and moved to remand the cases back to state court, to amend his complaint, to exclude evidence attached to the defendants' motions to dismiss, and to conduct discovery.

The district court denied Freeman's motion to remand the cases to state court because the complaints in both cases raised issues arising under federal law, specifically the LMRA. The court determined that Freeman's claims against Duke Power for breach of contract and wrongful discharge were preempted by § 301 of the LMRA and granted the defendants' motions to dismiss because the claims were brought beyond the applicable statute of limitation. The district court denied Freeman's motion to amend his complaint to allege that he was an at-will employee because the allegation would not have changed the fact that the claim was preempted by the LMRA. The district court dismissed the bad faith discharge and state constitutional claims as failing to state claims cognizable under North Carolina law.

The district court determined that Freeman's claim against the individual defendants for interference with contract was also preempted by the LMRA and subject to dismissal as untimely. It determined that even if the unfair and deceptive trade practices claim was not preempted by the LMRA, such a claim was unavailable under North Carolina law in the employment setting. The district court found that the defendants' motions to consolidate and Freeman's motions to exclude evidence and conduct discovery were all mooted by the dismissals. Freeman appeals.

II.

A.   Removal Jurisdiction

Freeman argues on appeal that both of his cases should have been remanded to state court because both complaints raised only state law

claims. Actions brought in state court are removable to federal court if the complaint raises a federal question. *See* 28 U.S.C. §§ 1331, 1441(a) (2000). To determine whether a complaint raises a federal question, we apply the "well-pleaded complaint" rule, which prevents a defendant from removing a case to federal court unless the plaintiff's complaint, without consideration of any potential defenses, establishes that the case arises under federal law. *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2494 (2004). A corollary to the well-pleaded complaint rule allows an action to be removed, notwithstanding the absence of a federal question in the plaintiff's complaint, if "a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* at 2495 (internal marks omitted). Even though the action alleges only state law claims, if those claims are completely preempted by federal law, the complaint "is in reality based on federal law." *Id.* (internal marks omitted).

The preemptive force of § 301 of the LMRA is unquestionably broad. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23-24 (1983). Section 301 totally displaces state causes of action related to contracts between employers and labor organizations, as well as other claims the resolution of which depends substantially on the interpretation of a CBA. *See Davis v. Bell Atlantic-W.V., Inc.*, 110 F.3d 245, 247 (4th Cir. 1997).

1. Action Against Duke Power

The *Davis* case is factually similar to Freeman's case against Duke Power, and its reasoning controls the outcome. In *Davis*, an employee entered a settlement agreement with her employer and union that settled a grievance brought pursuant to the CBA when the employer attempted to terminate the employee for absenteeism. *Davis*, 310 F.3d at 246. The settlement agreement reinstated the employee and provided that the employee was subject to immediate termination, without recourse to the grievance procedures in the CBA, if she violated the settlement agreement. The employee was subsequently terminated for violating the settlement agreement, and she brought state law claims for breach of the CBA, breach of the settlement, and wrongful discharge. *Id.*

As relevant here, this court held that the claim for breach of the settlement agreement was preempted because it depended on rights conferred on the employee by the CBA.[1] The settlement agreement derived from the CBA, in fact was entered as a result of a grievance proceeding brought pursuant to the CBA, and therefore its "entire vitality and legitimacy" drew from the CBA. *Id.* at 248. In the case at bar, the Union followed the grievance procedure in the CBA and entered into settlement negotiations with Duke Power, on Freeman's behalf, that resulted in the Grievance Resolution and Amendment in lieu of arbitration as provided by the CBA. Without the CBA, the Grievance Resolution and Amendment would not have existed. Settlements of employee grievances that are entered pursuant to the terms of a CBA are labor contracts within the meaning of § 301, which "preempts an alleged breach of the Union-negotiated agreement that settled an employee grievance." *Id.* at 249 (citing cases holding same).

Freeman attempts to distinguish *Davis* on the basis that certain terms used in the *Davis* settlement agreement were defined in the CBA, whereas there are no terms in the Grievance Resolution or the Amendment that need to be defined by reference to the CBA. However, the *Davis* court did not rely on the mutuality of terms for its holding. *Id.* ("While an independent employment contract's mere borrowing of one or more terms from a [CBA] does not in itself bring that contract within the scope of § 301 preemption, the settlement agreement here was not an independent employment contract . . . . The Union's [CBA] remained in full force to govern [the employee's] employment relationship except insofar as it was modified by the settlement agreement." (internal citations omitted)). The court construed the settlement agreement as a rider to the CBA. *Id.*

Although disputes arising over independent employment contracts unrelated to a CBA are not preempted by § 301 of the LMRA, *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-95 (1987), the Griev-

---

[1]Contrary to Freeman's assertions that the *Davis* court's discussion of the settlement agreement was dicta because Davis alleged breach of the CBA (Appellant's Br. at 21 n.1), the *Davis* court addressed the claims for breach of the CBA and breach of the settlement agreement as distinct claims.

ance Resolution and the Amendment are not independent of the CBA. The employees in *Caterpillar* had entered separate management contracts and only later became subject to a CBA when they were demoted. Their state law action was based on the management contracts, not anything derivative of the CBA, and thus was not preempted by the LMRA. *Id.* at 395 & n.9. The same cannot be said in the instant case, as the Grievance Resolution and Amendment derive their "entire vitality and legitimacy" from the CBA. *Davis*, 110 F.3d at 248.

The district court also determined that § 301 of the LMRA preempted Freeman's wrongful discharge claim against Duke Power. Freeman alleged in his complaint that Duke Power wrongfully discharged him in violation of North Carolina public policy as reflected in the state constitution, which protects an individual's right to "the enjoyment of the fruits of [his] own labor." N.C. Const. art. I, § 1. Freeman's wrongful discharge claim is preempted by the LMRA if it is "inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

The Supreme Court of North Carolina has recognized a cause of action for wrongful discharge in violation of public policy as a narrow exception to North Carolina's long-standing employment-at-will doctrine. *See Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445, 447 (N.C. 1989). However, "[t]he tort of wrongful discharge arises only in the context of employment at will." *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 448 (N.C. Ct. App. 1997) (dismissing wrongful discharge claim brought by a university professor who was covered by a contract). Contract employees are limited to contract remedies. Resolution of the wrongful discharge claim would require a determination of the type of employment relationship between Freeman and Duke Power, regardless of whether Freeman pleads that he is a contract employee or an at-will employee. Such an analysis necessarily would involve construction of the CBA, the Grievance Resolution, and the Amendment to determine what type of employment relationship existed between Freeman and Duke Power. The wrongful discharge claim is therefore preempted by the LMRA. *Allis-Chalmers*, 471 U.S. at 213.

Because Freeman's claims of breach of contract and wrongful discharge are preempted by § 301 of the LMRA and therefore raise a federal question, the district court properly retained jurisdiction over Freeman's case against Duke Power, and no remand to state court was in order.

### 2.   Action Against Thaxton & Kwascha

Freeman brought state law claims of tortious interference with contract and unfair and deceptive trade practices against two of his supervisors, alleging that they intentionally induced Duke Power to terminate his employment. The district court determined that the interference with contract claim was completely preempted by § 301 because it required interpretation of Thaxton's and Kwascha's supervisory authority as defined in the CBA, as well as a determination of whether Freeman violated the Grievance Resolution and Amendment. We agree.

As discussed above, a state law claim is completely preempted by the LMRA if it relates to contracts between employers and labor organizations, or if resolution of the claim depends substantially on the interpretation of a CBA. *See Davis*, 110 F.3d at 247. To state a claim for tortious interference with contract against Thaxton and Kwascha under North Carolina law, Freeman had to establish that (1) he had a valid contract with Duke Power that gave Freeman contractual rights; (2) the defendants knew of the contract; (3) the defendants intentionally induced Duke Power not to perform the contract; (4) the defendants acted without justification; and (5) Freeman was thereby damaged. *Embree Const. Group, Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 924 (N.C. 1992).

Freeman stated in his complaint that he had an employment agreement with Duke Power that gave him certain legal rights and privileges, that Thaxton and Kwascha intentionally induced Duke Power to terminate the contract, and that Thaxton's and Kwascha's conduct was outside of the scope of their employment (as Freeman's supervisors), in bad faith, for a wrongful purpose, with malice, and without any legal justification. (J.A. at 231-32.) A court would need to interpret the Grievance Resolution, the Amendment, and the CBA in an effort to determine Freeman's contractual rights, the extent of Thax-

ton's and Kwascha's supervisory authority, and whether Duke Power failed to perform its obligations to Freeman. We therefore hold that Freeman's claim against Thaxton and Kwascha for tortious interference with contract was preempted by § 301 of the LMRA. *See Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992) ("Clearly, the third element of this cause of action [under Virginia law], requiring a breach or termination of the contractual relationship, necessitates interpretation of the [CBA]."); *Steinbach v. Dillon Cos.*, 253 F.3d 538, 540 (10th Cir. 2001) (holding that a tortious interference claim alleging that a third party caused the employer to wrongfully terminate an employee was preempted by § 301 where the claim required a determination of whether the employer failed to perform the contract); *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000) (holding that an employee's state law claims for tortious interference with contract against a supervisor and a third party were preempted by § 301 where the claims would require interpretation of the CBA). The district court properly exercised jurisdiction over Freeman's case against Thaxton and Kwascha.

B.   Dismissal for Failure to State a Claim

Having determined that the district court properly exercised jurisdiction over both of Freeman's complaints, we turn now to the district court's dismissal of each of his claims. Where state law claims are preempted by the LMRA, the claim may still survive if it states a claim under the federal statute. *See Allis Chalmers Corp.*, 471 U.S. at 220 ("[The] claim must either be treated as a § 301 claim, . . . or dismissed as pre-empted by federal labor-contract law.").

1.   Claims Against Duke Power

a.   Breach of Contract/Wrongful Discharge

The district court dismissed Freeman's claims against Duke Power for breach of contract and wrongful discharge for failing to state a § 301 claim because both claims were brought outside of the applicable statute of limitations, borrowing the six-month limitation period contained in § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b) (2000). If a federal statute is silent as to the applica-

ble statute of limitations, we generally borrow the most analogous state limitations period. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). To avoid frustrating federal policy, however, courts should borrow a limitations period from an analogous federal statute if that statute clearly provides a closer analogy than available state statutes. *Id.* at 172.

The NLRA proscribes "unfair labor practices" and provides a six-month period within which to bring an unfair labor practices claim. 29 U.S.C. § 160(b). The six-month period takes into account "the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." *DelCostello*, 462 U.S. at 171 (internal marks omitted).

In this case, Freeman twice settled grievances filed on his behalf by the Union with Duke Power. The settlements provided that Duke Power could terminate Freeman for engaging in electrical contracting, and that Duke Power's decision to do so "shall be final." (J.A. at 12.) Freeman's claims for breach of contract and wrongful discharge challenge Duke Power's decision to terminate his employment despite his agreement in the settlement negotiations that Duke Power's decision would be final. Allowing Freeman to use the three-year statute of limitation provided under North Carolina law for breach of contract claims would undermine the NLRA's delicate balance between the competing interests of promoting the finality of private settlements and avoiding unjust settlements. *See DelCostello*, 462 U.S. at 171. The district court appropriately borrowed the NLRA's six-month statute of limitation and properly dismissed the breach of contract and wrongful discharge claims as being brought outside of that period.

b.   Direct Claims Under the State Constitution

Freeman asserted in the third count of his complaint that Duke Power's actions in limiting his ability to moonlight violated the North Carolina constitutional provision recognizing the inalienable right of all persons to "the enjoyment of the fruits of their own labor." N.C. Const. art. I, § 1. North Carolina's courts do not recognize a cause of action based on article I, section 1 of the state constitution to remedy private employment disputes. *See Teleflex Info. Sys., Inc. v. Arnold*,

513 S.E.2d 85, 88 (N.C. Ct. App. 1999) (affirming summary judgment for employer in suit brought by at-will employee claiming that his firing violated article I, section 1 of the state constitution). Rather, the provision limits *the state's* ability to regulate an individual's livelihood. *Id.* ("[T]he declaration of rights in [the North Carolina] State Constitution was inserted 'chiefly to protect the individual *from the State.*'" (quoting *North Carolina v. Ballance*, 51 S.E.2d 731, 734 (1949))). Thus, the district court properly dismissed Freeman's state constitutional claim.

Likewise, Freeman's direct cause of action under article I, section 19 of the state constitution, providing that no person shall be deprived of his property but by the law of the land, also fails. Article I, section 19 is the North Carolina state constitution's equivalent of the federal Constitution's Fourteenth Amendment due process clause. Both provisions protect individuals only against governmental action. Thus, Freeman has no cognizable action based on the state constitution against his wholly private employer. *See N.C. Nat'l Bank v. Burnette*, 256 S.E.2d 388, 394 (N.C. 1979) ("This constitutional [due process] shield does not protect citizens from the actions or activities of other private individuals."); *Weston v. Carolina Medicorp, Inc.*, 402 S.E.2d 653, 656-57 (N.C. Ct. App. 1991) ("'[S]tate action' is required to trigger the protections of the 'synonymous' due process provisions of the Fourteenth Amendment to the United States Constitution and Article 1, § 19 of the North Carolina Constitution."). The district court properly dismissed Freeman's third count.

### c. Bad Faith Discharge

Freeman argues that North Carolina courts are "undecided" as to whether a bad faith discharge claim is separately cognizable in North Carolina. The Supreme Court of North Carolina, however, unequivocally stated, in disagreeing with two of the federal district court cases relied upon by Freeman, that it "did not recognize a separate claim for wrongful discharge in bad faith" in a prior case. *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 173 (N.C. 1992). The district court properly dismissed Freeman's fourth count against Duke Power.

2.   Claims Against Thaxton and Kwascha

a.   Tortious Interference With Contract

Because the tortious interference claim is preempted, Freeman's claim must be dismissed unless it states a valid § 301 claim. Section 301 allows claims for "violations of contracts between an employer and a labor organization." 29 U.S.C. § 185 (2000). "Applying the most natural interpretation of this language, we [have previously held] that a suit against a non-signatory of a contract cannot be considered a suit for violation of the contract." *Covenant Coal Corp.*, 977 F.2d at 897. Bound, as both it and we are by prior controlling and unquestioned circuit precedent, the district court properly dismissed Freeman's claim against Thaxton and Kwascha for interference with contract.

b.   Unfair and Deceptive Trade Practices

To state a claim for unfair and deceptive trade practices against Thaxton and Kwascha under North Carolina General Statutes § 75-1.1, Freeman must establish that (1) the defendants "committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001). "The purpose of G.S. 75-1.1 is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State[,] and [it] applies to dealings between buyers and sellers at all levels of commerce." *Sara Lee Corp. v. Carter*, 519 S.E.2d 308, 311 (N.C. 1999) (internal marks omitted) (alterations in original). The statute generally does not apply to employment situations, *see Dalton*, 548 S.E.2d at 711, though the existence of an employment relationship will not necessarily defeat a claim if the parties are otherwise involved in a business relationship. *See Sara Lee Corp.*, 519 S.E.2d at 312 (allowing an unfair trade practices claim brought by an employer against an employee where the employee was involved in buyer-seller transactions with his employer).

Freeman's complaint alleges only that the individual defendants acted to cause Duke Power to terminate Freeman's employment con-

tract. (J.A. at 232-34.) Although N.C.G.S. § 75-1.1(b) defines "commerce" broadly as "business activities, however denominated," the Supreme Court of North Carolina has cautioned that the act "is not intended to apply to all wrongs in a business setting," including most employment disputes. *Dalton*, 548 S.E.2d at 657 (distinguishing *Sara Lee* on the basis that the employee in *Sara Lee* owed a fiduciary duty to his employer, and the employee was entrenched in a buyer-seller relationship with his employer, which fell squarely within the purview of the unfair trade practices act). Freeman's allegation that the defendants caused Duke Power to terminate him fails to meet the requirement that the defendants' acts be in or affecting commerce, *see Durling v. King* 554 S.E.2d 1, 4-5 (N.C. Ct. App. 2001) (affirming summary judgment where "no evidence was presented that the subject transactions had any impact beyond the parties' employment relationships"), and he therefore failed to state a claim under the state unfair and deceptive trade practices act.

### III.

We affirm the district court's order denying Freeman's motions to remand and dismissing Freeman's complaints against Duke Power and against Thaxton and Kwascha. We also affirm the district court's denial of the various pending motions as the dismissal of all claims makes the motions moot.

*AFFIRMED*