Pierre Richard **AUGUSTIN**, Plaintiff,

v.

**SECTEK, INC., et al., Defendant.**

**Civil Action No. 1:11–cv–490.**

United States District Court, E.D. Virginia, Alexandria Division.

Aug. 8, 2011.

Order Denying Reconsideration Aug. 26, 2011.

---

Steven W. Ray, Esq., of Isler Dare Ray Radcliffe & Connolly, P.C., for defendant SecTek, Inc.

## *ORDER*

CLAUDE M. HILTON, District Judge.

This matter comes before the Court on the Motion to Dismiss of Defendants Sec-Tek, Inc., Wilfred D. Blood., Michelle Fowler, and Frederick Springfield (the "SecTek Defendants") for Plaintiff's failure to state a claim upon which relief can be granted.

Plaintiff began working as an armed security guard for SecTek, Inc., on February 15, 2010. SecTek provided security services at Metro Place I pursuant to a contract with Federal Protective Services ("FPS"). The National Association of Special Police and Security Officers union ("Union") represented Plaintiff pursuant to a collective bargaining agreement ("CBA") effective on January 13, 2010. Defendant Fowler signed the CBA as the Vice President of Operations on behalf of SecTek.

The Complaint alleges that Plaintiff arrived at work at 7:30 AM, signed in for his weapon at 7:30 AM, and signed the FPS form 139 at 7:30 AM on the morning of November 8, 2010. At that time, Defendant Frederick Springfield commented that Plaintiff had falsified the form 139. Plaintiff then looked at the time on the video monitor, which he alleges was five to ten minutes fast. Plaintiff alleges that he signed out at 7:30 AM, checked the time on his cell phone, and signed back in at 7:31 AM.

Approximately ten minutes after Plaintiff reached his assigned post, Defendant Springfield summoned him to his office and told Plaintiff that he was going to report Plaintiff for falsifying the FPS 139 Form. Plaintiff resumed his duties and then requested a 44R break on the two-way radio. During his break, Plaintiff attempted to see what time the record reflected that he had clocked in to work, and then he left the building to call his wife to dictate an email to SecTek, Inc. regarding the time falsification issue. When Plaintiff returned to his post, he called the emergency phone number for FPS to file a report that he was being accused of falsifying the form 139.

Shortly thereafter, Plaintiff met with Defendant Springfield and several FPS Officers. The FPS officers requested Plaintiff's weapon, ammunition, drivers license, armed/unarmed licenses, first aid materials/ baton, and Homeland Security credentials, and returned his drivers license. After discussing the time entry issue, FPS officers escorted Plaintiff off the premises. Plaintiff was terminated by letter dated November 12, 2010.

In the Complaint, Plaintiff lists thirteen causes of action, including (I) Breach of Collective Bargaining Agreement, (II) Breach of Fiduciary Duty, (III) Defamation, (TV) Deprivation of Fourth Amendment Rights, (V) Violation of Fifth Amendment Rights, (VI) Common Law Fraud–Concealment, (VII) Common Law Fraud–Constructive Fraud, (VIII) Tortious Interference with Contract Common Law, (IX) Common Law Malice, (X) Common Law Wrongful Discharge, (XI) False Allegation for Unlawful Discrimination, (XII) Breach of Fair Duty of Care, and (XIII) Punitive Damages.

Generally an employee must exhaust any grievance or arbitration remedies provided in the CBA before filing a lawsuit, or the claim must be dismissed. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 653, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) ("[T]here can be no doubt that the employee must afford the union the opportunity to act on his behalf."); *accord Trent v. Bolger,* 837 F.2d 657, 659 (4th Cir.1988). The CBA between the Union and SecTek, Inc. states that "discipline and discharge matters *shall be* subject to the grievance and arbitration procedures contained in Article 13 of this Agreement" (emphasis added). Furthermore, the CBA states that:

> [t]he parties expressly acknowledge that the duty to use this grievance procedure, including binding arbitration, includes any and all disputes between any employee and the Company (and the Union and the Company) arising out of or relating to any employee's employment with the Company, whether grounded in contract, tort, or statutory law (including but not limited to federal, state and local civil rights and employment laws ...). This duty to arbitrate shall apply to all claims which the employee believes he/she may have against the Company, its affiliated companies or any of its officers, owners, directors, employees or agents.

The Union was actively pursuing the grievance process when Plaintiff made his first federal district court filing, without joining the Union as a party, eleven days after Defendant SecTek, Inc. issued Plaintiff's letter of termination. Because Plaintiff did not afford the union a full opportunity to act on his behalf and exhaust his administrative remedy, his breach of collective bargaining agreement claim must be dismissed against SecTek.

The Labor Management Relations (Taft–Hartley) Act § 301(a), 29 U.S.C.

§ 185(a) (2006), bars Plaintiff's breach of the CBA claim. Plaintiff's breach of collective bargaining agreement claim must be dismissed against Mr. Blood, Ms. Fowler, and Mr. Springfield, because courts have found that § 301 defendants must be signatories to the collective bargaining agreement for a federal court to exercise jurisdiction over them. *DeRay v. Larson,* 283 F.Supp.2d 706, 711 (D.Conn.2003). Neither Mr. Blood nor Mr. Springfield is a signatory to the CBA. Additionally, courts have interpreted the Supreme Court's decision in *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 407, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), to mean that § 301 does not allow suits by employees against individual managers. *E.g., DeRay,* 283 F.Supp.2d at 711–12. Thus, Plaintiff cannot maintain his CBA claim against Ms. Fowler.

■ An employee who has not exhausted the grievance procedures may nonetheless bring a federal claim against the employer under § 301 if the employee demonstrates that the union breached its duty of fair representation such that grievance procedures provide no meaningful recourse. *DelCostello,* 462 U.S. at 164–65, 103 S.Ct. 2281 (1983); *see also Amburgey v. Consolidation Coal Co.,* 923 F.2d 27, 29 (4th Cir.1991) ("A cause of action will only lie against an employer if the union has breached its duty of fair representation of the employee."). Although Plaintiff argues that NASPSO and Mr. Buriss breached a "fair duty of care," the Complaint does not adequately allege that the Union breached a duty of fair representation owed to Plaintiff. Plaintiff has pled no facts alleging that the Union breached its fair duty of representation owed to Plaintiff *before* Plaintiff made his first court filing. By contrast, Plaintiff attached as Exhibit 9 to his Complaint an email that shows that the Union was ac-

tively pursuing the grievance procedure on November 15, 2010 by requesting a ten day extension of time to review the matter thoroughly. Eight days later, Plaintiff made his first filing in federal court.

Other circuits have held that an employee expressly waives the right to arbitration when a plaintiff sues a defendant and seeks to invoke the court's jurisdiction over matters that would otherwise be arbitrable. *See, e.g., Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.,* 575 F.3d 476, 480–81 (5th Cir.2009) ("The court finds waiver when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.") (quotation marks omitted); *Woody v. Sterling Aluminum Prods., Inc.,* 243 F.Supp. 755 (E.D.Mo.1965), *aff'd,* 365 F.2d 448 (8th Cir.1966). By pursuing a remedy in federal court, Plaintiff waived his right to arbitration on November 23, 2010. Plaintiff has alleged no facts upon which an inference can be drawn that the Union breached its duty of fair representation prior to Plaintiff's initiation of litigation and waiver of the grievance process. Thus, any § 301 claim that Plaintiff is bringing must also be dismissed because it fails to state a plausible claim that the Union breached its duty of fair representation.

■ Section 301 also preempts the state law causes of action pled by Plaintiff that depend on an analysis of the terms of the collective bargaining agreement, *Clark v. Newport News Shipbuilding & Dry Dock Co.,* 937 F.2d 934, 937 (4th Cir.1991); *Mullins v. Int'l Union of Operating Eng'rs Local No. 77 AFL–CIO of Washington, D.C.,* 214 F.Supp.2d 655, 668 (E.D.Va.2002) ("Section 301 not only preempts state law claims against parties to a collective bargaining agreement, but also preempts state law claims against non-signatories where interpretation of the

agreement is required for resolution."). Plaintiff alleges that the SecTek Defendants breached a fiduciary duty owed to Plaintiff, but Virginia law has not recognized a fiduciary duty owed to an employee by an employer. *Wynn v. Wachovia Bank, N.A.*, No. 3:09CV136, 2009 WL 1255464, at *5 (E.D.Va. May 6, 2009); *see also Starks v. McCabe*, 49 Va.Cir. 554, 560 (Va.Cir.Ct.1998). Consequently, any fiduciary duty owed must arise from the CBA. Because an analysis of the CBA would be necessary to determine a duty owed, if any, § 301 preempts Plaintiff's breach of fiduciary duty claim.

■ Section 301 preempts the defamation claim because it is inextricably intertwined with consideration of the terms of the CBA. *See Barbe v. Great Atl. & Pac. Tea Co.*, 722 F.Supp. 1257, 1260 (D.Md. 1989) ("The resolution of the elements of the state law [defamation] claim are thus inextricably intertwined with the definition of the … arbitration process contained in the collective-bargaining agreement and with an understanding of the relative interests of the union, the employer and the employee in communicating employee discipline actions. The defamation claim is therefore preempted under § 301."), *aff'd*, 940 F.2d 651 (4th Cir.1991) (unpublished), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 939, 117 L.Ed.2d 109 (1992); *Mullins*, 214 F.Supp.2d at 668–69. Plaintiff alleges that he was defamed in the termination letter and through statements contained in the FPS report of the incidents leading to termination. The CBA expressly states that discharge matters are subject to the grievance and arbitration procedures set forth within the agreement, and the FPS report and termination letter both constituted events surrounding Plaintiff's discharge. Consequently, § 301 preempts Plaintiff's defamation claim.

■ Section 301 also preempts Plaintiff's common law fraud claims for concealment and constructive fraud. The allegations underlying Plaintiff's fraud claims concern "false" statements made in the termination letter and Plaintiff's nescience that the clock for time entry was not synchronized with real time. The Virginia Supreme Court has held that in a fraud action where the conduct at issue related to a duty arising out of contract, the claim sounds in contract and not in tort. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344, 346–47 (1998). The CBA outlines what constitutes just cause for terminating an employee, including violation of the FPS Security Guard Manual that contains procedures for clocking in, use of personal electronic devices at work, post abandonment, or falsification of time records. Where, as here, the alleged misrepresentations and concealments are inextricably intertwined with an analysis of the terms contained in the CBA, § 301 preempts both fraud claims.

■ Plaintiff must prove four elements to state a claim for tortious interference with contract in Virginia: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of [defendant]; (3) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (4) resultant damage to the [plaintiff]." *Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir.1992). The third element of the tortious interference claim necessitates an interpretation of the collective bargaining agreement. "Only by interpreting a contract can a court determine whether the contract has been breached." *Id.* Therefore, § 301 also preempts Plaintiff's tortious interference with contract claim.

Plaintiff's claims for common law wrongful discharge and false allegation for unlawful discrimination are both based on his termination for allegedly refusing to "enter an incorrect or misleading time," which he claims violated public policy expressed in 18 U.S.C. § 1001. In essence, Plaintiff seeks to bring a claim for wrongful termination in violation of public policy, a cause of action recognized by the Supreme Court of Virginia in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985) (holding that the employment-at-will doctrine does not apply to an at-will employee who claims to have been terminated in violation of public policy). In a similar case in which an employee brought a cause of action for wrongful violation of public policy as a narrow exception to North Carolina's employment-at-will doctrine, the Fourth Circuit held that resolution of the wrongful discharge claim would require a determination of the type of employment relationship, which would in turn require construction of the CBA. *Freeman v. Duke Power Co.*, 114 Fed.Appx. 526, 532 (4th Cir.2004) (per curiam). Similarly, the resolution of Plaintiff's wrongful discharge claim also requires a determination of the employment relationship at issue and an analysis of the CBA, and § 301 preempts the claim.[1]

Plaintiff's claims for alleged violations of his Fourth and Fifth Amendment rights must be dismissed because the Fourth and Fifth Amendments proscribe only governmental action and do not apply to private actors. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *see also United States*

*v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993) (holding that the Fifth Amendment guarantee does not protect against the conduct of private parties); *Baggs v. Eagle–Picher Indus., Inc.*, 750 F.Supp. 264, 271 (W.D.Mich.1990) (recognizing that the Fourth Amendment does not protect against a search or seizure by a private party even if its arbitrary), *aff'd*, 957 F.2d 268 (6th Cir.1992).

Under Virginia law, there is no cognizable cause of action for malice or punitive damages. *See Albright v. Burke & Herbert Bank & Trust Co.*, 249 Va. 463, 457 S.E.2d 776, 778 (1995) (affirming a dismissal of a claim for actual and constructive malice); *see also Johnson v. Moore*, No. 3:10CV537, 2011 WL 1637079, at *12 (E.D.Va. Apr. 29, 2011) (recognizing that there is no independent or free-standing claim for punitive damages); *Eslami v. Global One Comm'ns, Inc.*, 48 Va.Cir. 17 (Va.Cir.Ct.1999) ("Under Virginia law, punitive damages are not a cause of action, but a remedy."). Because Virginia law does not acknowledge a cause of action for malice or punitive damages, Plaintiff's claims for malice and punitive damages must be dismissed.

It is hereby

ORDERED that Defendants' Motion to Dismiss is GRANTED, and Defendants SecTek, Inc., Wilfred D. Blood, Michelle Fowler, and Frederick Springfield are DISMISSED from the case; and

FURTHER ORDERED that Plaintiff's Motion to Object and Oppose Ruling on

---

1. Plaintiff's claim is further subject to dismissal because Plaintiff must identify a Virginia statute establishing a public policy to state a claim under *Bowman,* and Plaintiff bases his cause of action on a federal statute. *See Lawrence Chrysler Plymouth Corp. v. Brooks,* 251 Va. 94, 465 S.E.2d 806, 808–09 (1996);

*see also Storey v. Patient First Corp.,* 207 F.Supp.2d 431, 450 (E.D.Va.2002) ("It is worth emphasizing that a claim under *Bowman* must find root in a state statute; it cannot have its genesis in an act of Congress.").

Defendant's Dispositif [sic] Motion is DE-NIED as moot.

## ORDER ON RECONSIDERATION

This matter comes before the Court on Plaintiff's Motion for Reconsideration of Order made on Defendants' Dispositif (sic) Motion on August 8, 2011 Pursuant to FRCP 59(e) and Federal Rule of Evidence 201. The Court finds that the previous decision in this matter was correct for the reasons stated, and it is hereby

ORDERED that Plaintiff's Motion is DENIED.